STATE of Utah, Plaintiff and Appellee,

v.

ONE 1984 OLDSMOBILE and One Hundred Eighty–Nine Thousand Eight Hundred Seventy Dollars in United States Currency, Defendants.

Jesus Valenzuela, Appellant.

No. 940115.

Supreme Court of Utah.

March 24, 1995.

---

Jan Graham, Atty. Gen., Salt Lake City, and Rulon Don Brown, Richfield, for plaintiff.

Stephen R. McCaughey, Salt Lake City, and Donovan Dunnion, San Diego, CA, for defendants.

ZIMMERMAN, Chief Justice:

Jesus Valenzuela appeals an order of the district court granting the State's petition, filed pursuant to the Utah Controlled Substances Act,[1] for the forfeiture of $189,870 in United States currency.[2] We reverse.

We reverse a trial court's findings of fact only if they are " 'against the clear weight of the evidence,' thus making them 'clearly erroneous.' " *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989) (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)); *see also Beesley v. Harris*, 883 P.2d 1343, 1347 (Utah 1994). In making such a determination, we view the evidence in a light most favorable to the trial court's findings. We recite the facts in accordance with that standard. *Van Dyke v. Chappell*, 818 P.2d 1023, 1024 (Utah 1991).

On January 21, 1993, Deputy Phil Barney of the Sevier County Sheriff's Office stopped a 1984 Oldsmobile for speeding. At Barney's request, the driver of the vehicle produced a driver's license and vehicle registration. The license identified the driver as one Jorge L. Urueta of Kansas City, Missouri; the vehicle was registered to Hignacio Nieto of Kansas City, Kansas. Urueta told Barney that he had borrowed the vehicle so that he could visit his brother in California.

After he issued a speeding citation to Urueta, Barney asked if he could search the vehicle for weapons, drugs, and money. Urueta consented to the search. During the search, Barney found two compartments hidden in the rear quarterpanels of the vehicle. The compartments had been carpeted to cushion the contents. Barney found thirty-two aluminum-wrapped packages of United States currency inside the hidden compartments. According to Barney, Urueta originally denied any knowledge of the currency or how it came to be in the vehicle.

Barney eventually discovered that the driver of the vehicle could access the hidden compartments by starting the vehicle, placing the car in reverse, depressing the brake, and pressing two buttons on the left door. At trial, Barney testified, on the basis of his experience as a law enforcement officer, that these types of compartments were commonly used to transport drugs.[3]

After Barney seized the currency, he contacted Kevin Williams, an employee of the Department of Corrections with expertise in detection of narcotics by the use of specially trained dogs. Williams testified at trial that his dog "hit" on one of the stacks of currency, indicating the presence of narcotics on the currency. Williams never had the dog sniff the car or the hidden compartments.

The State then initiated this forfeiture action. At trial, Jesus Valenzuela, the claimant of the currency, testified that the money was his. He claimed that the currency was the

---

1. Utah Code Ann. §§ 58–37–1 to –20.

2. That portion of the forfeiture order relating to the 1984 Oldsmobile is not at issue on this appeal.

3. Barney testified at trial that he had observed compartments similar to the ones at issue here on approximately ten to fifteen occasions. In each of those instances, according to Barney, the compartment was related to the distribution of narcotics.

proceeds of a sale of property for which he received 540,000,000 Mexican pesos, which he then converted into United States currency in two banking transactions. Valenzuela was unable to recall the names of the banks involved in the transactions. He further testified that he had delivered the currency to Urueta in Mexico with instructions that he purchase farm machinery in the United States. Urueta testified that he had made one inquiry regarding a purchase of machinery in Missouri. According to Urueta, he was distressed by the inability of the machinery dealer to discuss transportation of the machinery into Mexico, and therefore, Urueta decided to travel to California to conduct his business.

At the close of the evidence, Valenzuela moved to dismiss on the ground that the State had failed to prove by a preponderance of the evidence that the money was used or intended to be used to violate the Utah Controlled Substances Act. In support of his position, Valenzuela cited this court's opinion in *In re One Hundred Two Thousand Dollars in U.S. Currency*, 823 P.2d 468 (Utah 1992). In that case, under facts remarkably similar to those in the instant case, this court held that it is only where the Utah Controlled Substances Act is violated that drug proceeds are subject to forfeiture under section 58–37–13 of the Code. *Id.* at 470.

In response to Valenzuela's arguments, the State asserted that Urueta's actions (i.e., travelling through Utah on the way to purchase drugs in California) constituted an overt act in furtherance of a conspiracy punishable in Utah under sections 76–1–201(1)(d) and 58–37–8(7) of the Utah Code. The State also asserted that Valenzuela's facially incredible story was insufficient to rebut the presumption of forfeiture set out in section 58–37–13(1)(g)(ii) of the Code. That section provides:

> [T]here is a rebuttable presumption that all money, coins, and currency found in proximity to forfeitable controlled substances, drug manufacturing or distributing paraphernalia . . . are forfeitable under this section; the burden of proof is upon the claimants of the property to rebut the presumption.

Utah Code Ann. § 58–37–13(1)(g)(ii). This provision was implicated, according to the State, because the money at issue was found in proximity to drug distributing paraphernalia: to wit, the hidden compartments.

After closing arguments, the district court indicated its intention to enter an order of forfeiture. In its formal judgment, the district court concluded, as a matter of law, that it had jurisdiction to order a forfeiture pursuant to sections 58–37–8(7) and 76–1–201 of the Utah Code. The district court went on to conclude that the presumption found in section 58–37–13(1)(g)(ii) applied and that the testimony of Valenzuela and Urueta was not credible and was therefore not sufficient to carry the burden of proof. Valenzuela appeals.

We first state the appropriate standard of review. The proper construction of the Utah Controlled Substances Act is a question of law. *State v. A House & 1.37 Acres of Real Property Located at 392 South 600 East, Nephi*, 886 P.2d 534, 537 (Utah 1994); *see also State v. Larsen*, 865 P.2d 1355, 1357 (Utah 1993); *State v. James*, 819 P.2d 781, 796 (Utah 1991). "Accordingly, we grant no particular deference to the district court's rulings but review them for correctness." *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994); *accord Ward v. Richfield City*, 798 P.2d 757, 759 (Utah 1990).

Valenzuela asserts that we should be guided by our decision in *One Hundred Two Thousand Dollars*. Because we find that case dispositive, we set it out in some detail below. In *One Hundred Two Thousand Dollars*, an Emery County deputy sheriff stopped a vehicle because it was spewing smoke. 823 P.2d at 469. The deputy noted that the vehicle carried two gas tanks, one of which made a "dead" sound when he struck it with his flashlight. He also noticed that the bolts and straps holding the tank were worn and loose. *Id.* The deputy arrested the driver for driving with a suspended license and impounded the vehicle. *Id.*

After they obtained a search warrant, the authorities searched the vehicle. The search revealed that one gas tank was false and that

it contained approximately $100,000 in United States currency. *Id.* No controlled substances were found in the vehicle or on the person of any of the occupants of the vehicle. A drug dog did, however, "alert" on the currency. *Id.*

No charges were filed against any of the occupants of the vehicle, and all of them disclaimed knowledge of the currency and the false gas tank. *Id.* The claimant, who was not riding in the van, asserted that he had recently sold his business for a large sum of cash. He claimed that he had transported the money to Michigan to purchase a business there but had arranged for its return in the false gas tank when the deal failed to materialize. *Id.* On the basis of the facts set out above, the trial court concluded that the money had been used in illegal drug transactions and ordered the money forfeited pursuant to the Utah Controlled Substances Act. *Id.* The claimant appealed the ruling, contending that the evidence was insufficient to support a forfeiture.[4] This court reversed, holding as follows:

> We find it unnecessary to comment on the sufficiency of the evidence because a basic element of a cause of action for forfeiture is absent. Utah Code Ann. § 58–37–13(1)(g) provides that the following are subject to forfeiture: "everything of value furnished or intended to be furnished in exchange for a controlled substance *in violation of this act,* all proceeds traceable to *any violation of this act,* and all monies, negotiable instruments, and securities used or intended to be used to facilitate *any violation of this act . . . ."* (Emphasis added.) The statute thus provides for the forfeiture of currency only when it has been used or was intended to be used to facilitate a violation of the act. It is not enough that the currency may have been generated in a drug transaction which took place outside of Utah. In that case, there would be no violation of the Utah act. It is only when the Utah act is violated that drug proceeds are subject to forfeiture under section 58–37–13(1). Here, no at-

tempt was made by the State to prove that the money came from or was intended to be used in a drug transaction in this state. No controlled substances were found in the van or on the person of any of the occupants. No criminal charges were filed against any of them. The van was merely passing through Utah on an interstate highway.

> The judgment cannot be sustained due to the lack of an element of forfeiture.

*Id.* at 469–70.

■ As was the case in *One Hundred Two Thousand Dollars,* the State has made no attempt to prove that the money came from or was intended to be used in a drug transaction in this state. In fact, the State affirmatively asserted at trial that Urueta was simply passing through Utah on his way to complete a drug transaction in California. In addition, no controlled substances were found in the car or on the person of Urueta, and no criminal charges were filed against him. The State's sole interest was in obtaining forfeiture of the money carried by Urueta. Because "[t]he [car] was merely passing through Utah on an interstate highway," the district court erred when it granted the State's petition for forfeiture of the currency at issue here. *See id.*

■ In an attempt to distinguish our decision in *One Hundred Two Thousand Dollars,* the State argues that it is a violation of the Utah Controlled Substances Act to transport currency through the state of Utah that will be used in a drug transaction somewhere outside of the state. In support of its argument, the State relies on section 58–37–8(7) of the Utah Code, which provides as follows: "Any person who attempts or conspires to commit any offense unlawful under [the Utah Controlled Substances Act] is upon conviction guilty of one degree less than the maximum penalty prescribed for that offense." The State asserts that this provision, when read in concert with section 76–1–201(1)(d) of the Code,[5] provides the district court juris-

---

**4.** The claimant asserted that the only evidence of an illegal drug transaction was that the currency had been hidden and that a drug dog alerted on

it. *In re One Hundred Two Thousand Dollars in U.S. Currency,* 823 P.2d 468, 469 (Utah 1992).

**5.** Section 76–1–201(1)(d) provides:

diction to order the forfeiture. Although the State's argument is not quite clear, it seems to proceed as follows: (i) Section 58–37–8(7) of the Utah Controlled Substances Act criminalizes all conspiracies to produce, manufacture, distribute, or possess illegal drugs, no matter that the conspiracy originated in a foreign jurisdiction and that the conspirators never intended to produce, manufacture, distribute, or possess the drugs in Utah; and (ii) the state acquires jurisdiction, pursuant to section 76–1–201(1)(d), to punish conspirators as soon as they enter Utah on their way to consummate a drug transaction, even though that drug transaction will not take place in Utah.

In interpreting section 58–37–8(7) of the Utah Controlled Substances Act, we look first to the plain language of the statute. *A House,* 886 P.2d at 537; *Larsen,* 865 P.2d at 1357; *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1112 (Utah 1991); *Brinkerhoff v. Forsyth,* 779 P.2d 685, 686 (Utah 1989); *see also Bonham v. Morgan,* 788 P.2d 497, 500 (Utah 1989) (per curiam) ("Unambiguous language in [a] statute may not be interpreted to contradict its plain meaning."). In construing a statute, we assume that "each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Savage Indus., Inc. v. Utah State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991).

The plain language of section 58–37–8(7) leads us to conclude that it does not apply given the facts of this case. Section 58–37–8(7) only prohibits attempts and conspiracies to violate the Utah Controlled Substances Act, Utah Code Ann. § 58–37–8(7) (prohibiting attempts or conspiracies "to commit any offense unlawful *under this chapter*" (emphasis added))—that is to say, attempts or conspiracies to produce, manufacture, distribute, or possess drugs *in Utah.* In the case at hand, the undisputed facts at trial demonstrated that Urueta was simply passing through Utah on his way to California. Furthermore, the State did not adduce any evidence that Urueta intended to use the currency in his possession to produce, manufacture, distribute, or possess drugs in Utah. In fact, the evidence adduced by the State at trial tended to negate any such inference. Thus, even if Urueta were traveling through Utah to complete a drug transaction in California, his actions did not constitute a violation of the Utah Controlled Substances Act.[6]

■ The State also argues that the forfeiture order is appropriate under the presumption set out in section 58–37–13(1)(g)(ii) of the Code. That section creates a rebuttable presumption that all currency found in proximity to drug distributing paraphernalia is forfeitable. Utah Code Ann. § 58–37–13(1)(g)(ii). The parties' arguments center almost exclusively around the issue of whether the hidden compartments qualify as "drug manufacturing or distributing paraphernalia." We need not reach this issue, however, because, even assuming that the presumption applies, Va-

---

(1) A person is subject to prosecution in this state for an offense which he commits, while either within or outside the state, by his own conduct or that of another for which he is legally accountable, if:

. . . . .

(d) The conduct within the state constitutes an attempt, solicitation, or conspiracy to commit in another jurisdiction an offense under the laws of both this state and such other jurisdiction.

Utah Code Ann. § 76–1–201(1)(d).

6. Although we hold that the state cannot reach out and seize currency that may be used in a drug transaction outside of the state of Utah simply because the currency passes through the state, we note that the currency at issue may be subject to forfeiture under 21 U.S.C. § 881(a)(6) of the United States Code. Section 881(a)(6) provides:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . . .

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this title, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this title, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6).

lenzuela met his burden of rebutting the presumption. As set out above, forfeiture of currency is appropriate only where the currency has been used or was intended to be used to facilitate a violation of the Utah Controlled Substances Act. *One Hundred Two Thousand Dollars,* 823 P.2d at 470. At trial, Valenzuela presented evidence that Urueta was traveling through Utah in furtherance of a legitimate business transaction. The State agreed that Urueta was simply passing through Utah but asserted that he was planning to use the currency to purchase drugs in California. Thus, because it was undisputed at trial that the currency was not intended to facilitate a drug transaction in Utah, the presumption of forfeiture set out in section 58–37–13(1)(g)(ii) was overcome.

The judgment of the district court is hereby reversed.

STEWART, Associate C.J., and HOWE, DURHAM and RUSSON, JJ., concur.