2000 UT 17

**STATE of Utah, Plaintiff and Appellee,**

v.

**REAL PROPERTY AT 633 EAST 640 NORTH, OREM, UTAH, Defendant,**

**Linda Cannon, Appellant.**

**No. 980117.**

Supreme Court of Utah.

Jan. 19, 2000.

James Taylor, Laura Cabanilla, Provo, for plaintiff.

Randall Gaither, Salt Lake City, for appellant.

HOWE, Chief Justice:

¶ 1 Linda Cannon appeals from a trial court-ordered forfeiture of her real property located at 633 East 640 North in Orem, Utah (the "defendant property"), following her conviction for several drug-related offenses. She contends that the forfeiture violated constitutional prohibitions against double jeopardy and excessive fines. She also assigns as error the trial court's taking judicial notice on remand of the final disposition of criminal proceedings arising out of two later searches of the defendant property, alleging that the trial court thereby violated her constitutional due process rights.

¶ 2 This matter is before us for the second time. On Cannon's previous appeal, we remanded the case to the trial court for an entry of findings of fact and conclusions of law regarding her constitutional claims. *See State v. 633 East 640 North*, 942 P.2d 925 (Utah 1997). We refer the reader to our opinion in that case for a full recitation of the relevant facts. Briefly stated, following a seizure of narcotics, drug paraphernalia, and related monies found during a warranted search (the "first warranted search"), the Utah County attorney, on behalf of the State of Utah, brought this action to forfeit the defendant property pursuant to Utah Code Ann. § 58-37-13, the Utah Controlled Substances Act ("UCSA"). In the next eighteen months, two additional searches—and additional seizures of drugs and drug paraphernalia—were conducted. A jury convicted Cannon on several drug charges stemming from the first search.[1] After undergoing a sixty-day evaluation in the Utah State Prison's Diagnostic Unit, the trial court placed her on probation and ordered her to enter and complete a drug treatment program.

¶ 3 Following a hearing, the trial court ordered the forfeiture of the defendant property, valued at between $71,272.30 and $80,-000.00. Cannon subsequently appealed the

---

1. Cannon was convicted of: (1) possession of marijuana with intent to distribute, a third degree felony, for which she was sentenced to prison for zero to five years; (2) possession of cocaine, a second degree felony, for which she was sentenced to one to fifteen years; (3) illegal drug tax, a third degree felony, for which she was sentenced to zero to five years; and (4) possession of drug paraphernalia, a class B misdemeanor, for which she was sentenced to not more than six months in jail. All terms were ordered to run concurrently. Additionally, Cannon was fined $2,000.00, and an additional $1,700.00 surcharge was imposed.

forfeiture order to this court. We affirmed the trial court's rulings; however, we remanded the case for an entry of findings of fact and conclusions of law on the constitutional challenges so that we could address the trial court's alleged violations of Cannon's constitutional protections against excessive fines and double jeopardy.

¶ 4 On remand, both Cannon and the State filed proposed findings of fact and conclusions of law; Cannon also filed a request for oral argument. The trial court denied the request for oral argument and signed the State's findings of fact and conclusions of law, taking judicial notice of the second and third searches of the defendant property and the resolution of resultant criminal charges against her. Cannon now appeals, claiming her state and federal constitutional due process protections[2] against excessive fines[3] and double jeopardy[4] have been violated.

## ANALYSIS

### I. FORFEITURE AS AN "EXCESSIVE FINE"

¶ 5 Cannon contends that the trial court-ordered forfeiture of her residence violated her state and federal constitutional protections against the imposition of excessive fines. However, because Cannon fails to support her state constitutional arguments with any substantive analysis, these arguments do not warrant separate analysis under the Utah Constitution. Accordingly, we decide this case on the basis of the United States Constitution alone. *See State v. 392 South 600 East,* 886 P.2d 534, 539 n. 7 (Utah 1994); *State v. Spurgeon,* 904 P.2d 220, 224 n. 2 (Utah Ct.App.1995).

¶ 6 Because the law in Utah is unsettled, our holding today sets forth the analysis for use in future forfeiture cases under the Ex-

cessive Fines Clause. In doing so, we draw upon the following cases: *United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998); *United States v. 6380 Little Canyon Road,* 59 F.3d 974 (9th Cir. 1995); *392 South 600 East,* 886 P.2d at 542 (quoting *United States v. 9638 Chicago Heights,* 27 F.3d 327, 331 (8th Cir.1994)).

¶ 7 Before turning to Cannon's specific arguments, it is first necessary to examine the history of excessive fines analysis. The United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed...." U.S. Const. amend. VIII. The historical foundation and reasoning behind current excessive fines analysis has been well documented elsewhere; a brief history is sufficient for our purposes here.[5]

¶ 8 In *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the United States Supreme Court held that the Excessive Fines Clause applied to drug-related forfeitures of property. *Id.* at 622, 113 S.Ct. 2801. The Court, however, declined to establish a specific test to determine when a forfeiture should be considered constitutionally excessive, deciding instead to "allow the lower courts to consider that question in the first instance." *Id.* at 622–23, 113 S.Ct. 2801 (citations omitted). Justice Scalia proposed that the sole measure of excessiveness should be the relationship between the defendant property and the offense, i.e., the property's "instrumentality." *Id.* at 627–28, 113 S.Ct. 2801 (Scalia, J., concurring). The majority considered Scalia's "instrumentality test," but stated: "We do not rule out the possibility that the connection between the property and the offense may be relevant, but our decision today in no way limits [lower courts] from considering other factors in de-

---

**2.** *See* U.S. Const. amend. V.; Utah Const. art. I, § 7.

**3.** *See* U.S. Const. amend. VIII; Utah Const. art. I, § 9.

**4.** *See* U.S. Const. amend. V.; Utah Const. art. I, § 12.

**5.** For a more extensive recitation of the analytical background to excessive fines protection and forfeiture, see generally, *392 South 600 East,* 886 P.2d 534; Kristen Michelle Caione, Note, *When Does In Rem Civil Forfeiture Under 21 U.S.C. 881(a)(7) Constitute an Excessive Fine?: An Overview and an Attempt to Set Forth a Uniform Standard,* 47 Syracuse L.Rev. 1093 (1997).

termining whether the forfeiture of ... property was excessive." *Id.* at 623 n. 15, 113 S.Ct. 2801.

¶ 9 Since *Austin,* "there has been little uniformity both within and between the circuits as to the appropriate test to determine excessiveness. In order to promote uniformity, it is desirable to standardize the analysis used to determine when specific forfeitures violate the Excessive Fines Clause." Caione, *supra* note 5 at 1095; *see also United States v. 427 & 429 Hall St.,* 853 F.Supp. 1389, 1397–98 & nn.16–19 (M.D.Ala.1994) (noting existence of cases adopting each of following tests: pure instrumentality, pure proportionality, multifactor, and a combined instrumentality and proportionality test). In *Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), however, the United States Supreme Court clarified the requisite standard. Realizing the inherent subjectivity and imprecision in judicial determinations of the gravity of an offense, and examining how the legislature has treated constitutional excessiveness in other contexts, the Court rejected a strict proportionality test in favor of a "gross disproportionality standard." *Bajakajian,* 524 U.S. at 329, 118 S.Ct. 2028.

¶ 10 We have addressed the issue of forfeitures as excessive fines on only a few occasions. In the most recent instance—pre-*Bajakajian*—we followed the suggestion in *Austin* that "the connection between the defendant property and the offense is the beginning point, rather than the sole criterion, in determining whether a forfeiture is constitutionally excessive." *392 South 600 East,* 886 P.2d at 542 (citation omitted). We declined to establish any further steps in the analysis, stating that as future situations arise in which an instrumentality analysis is not dispositive, we would address additional factors at that time. *See id.* at 542.

¶ 11 Now, the *Bajakajian* opinion provides us with the second prong to our excessive fines test merely hinted at in *392 South 600*

*East,* namely, gross disproportionality. The Ninth Circuit prescribed a similar two-prong test in *6380 Little Canyon Road,* 59 F.3d 974 (9th Cir.1995) ("*6380 Little Canyon Road*"). There, the court indicated that "instrumentality is a threshold test.... If the government succeeds in showing a substantial connection between the property ... and the offense, then the claimant has the burden to show that forfeiture of his property would be grossly disproportionate given the nature and extent of his criminal culpability." *Id.* at 985 (footnotes omitted).

¶ 12 We similarly hold that the threshold test in real property forfeitures [6] is whether the defendant property is an instrumentality of the offense. If instrumentality is proven, we must then examine whether the ordered forfeiture is "grossly disproportionate" to the offense. However, because in the instant case we rest our decision on gross disproportionality, we will assume for purposes of discussion, but not decide, that the instrumentality test has been satisfied.

¶ 13 We now examine whether the forfeiture is grossly disproportionate to the gravity of the offense. In *392 South 600 East,* we stated: "As future cases present situations in which the instrumentality analysis is not dispositive, we can address other factors that may be comprehended by an excessive fines analysis." *392 South 600 East,* 886 P.2d at 542. One of the "future cases" we foresaw is now before us. Fortunately, because of *Bajakajian,* we are no longer left entirely to our own devices in addressing what these "other factors" may be.

¶ 14 The *Bajakajian* court clarified the excessiveness analysis, rejecting strict proportionality and adopting instead a "gross disproportionality" standard, declaring:

In applying this standard, the district courts in the first instance, and the courts of appeals, reviewing the proportionality determination *de novo,* must compare the amount of the forfeiture to the gravity of

6. We note that an instrumentality inquiry is not relevant in cases dealing with the forfeiture of monies. Instead, such cases are examined using solely a proportionality determination. *See Baja-* *kajian,* 524 U.S. at 329 & n. 9, 118 S.Ct. 2028; *United States v. $273,969.04 United States Currency,* 164 F.3d 462, 466 n. 3 (9th Cir.1999).

the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional.

524 U.S. at 331, 118 S.Ct. 2028 (footnotes omitted). This, then, provides the second prong for future excessiveness analyses.

### 1. The test in theory

¶ 15 The individual factors *Bajakajian* set forth to determine the gravity of a specific offense are those articulated in the United States Supreme Court's Cruel and Unusual Punishment Clause precedents. *See Bajakajian*, 524 U.S. at 330–31, 118 S.Ct. 2028 (citing *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), *overruled on other grounds by Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991);[7] *Rummel v. Estelle*, 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)). These precedents suggest that the proportionality prong of an excessiveness inquiry "should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem*, 463 U.S. at 292, 103 S.Ct. 3001. Upon review of the *Solem* test, the *Bajakajian* court has determined and this court now determines that it is adaptable for use in forfeiture cases.

¶ 16 Instead of applying a strict *Solem* test, however, both parties have focused on a sample list of factors we cited in *Nephi*. Cannon asserts that these factors show the forfeiture here was grossly disproportionate to the gravity of the offense. The State uses the same factors to contend just the opposite.[8]

¶ 17 The factors that we suggested in *Nephi* were factors the Eighth Circuit used in its excessiveness analysis. Those factors included " 'the monetary value of the property, the extent of criminal activity associated with the property, the fact that the property was a residence, the effect of forfeiture on innocent occupants of the residence, including children, or any other factors that an excessive fines analysis might require.' " *392 South 600 East*, 886 P.2d at 542 (quoting *United States v. 9638 Chicago Heights*, 27 F.3d 327, 331 (8th Cir.1994)). The Ninth Circuit, in *6380 Little Canyon Road*, utilized a similar and somewhat more expansive analysis: once the government proves instrumentality, "the claimant has the burden to show that forfeiture of his property would be grossly disproportionate given the nature and extent of his criminal culpability." *6380 Little Canyon Road*, 59 F.3d at 985. To determine the forfeiture's harshness, the Ninth Circuit set forth three factors: "(1) the fair market value of the property; (2) the intangible, subjective value of the property, e.g., whether it is the family home; and (3) the hardship to the defendant, including the effect of the forfeiture on defendant's family

---

**7.** *Harmelin* overrules *Solem* insofar as proportionality relates to an analysis under the Cruel and Unusual Punishment Clause of the Eighth Amendment. However, *Bajakajian*, decided seven years after *Harmelin*, specifically references *Solem* in discussing the standard of gross disproportionality.

**8.** The trial court, having adopted the State's proposed findings of fact and conclusions of law as its own, addressed some of these factors and some of the *Solem* factors, albeit cursorily. Concerning the excessiveness issue, the trial court concluded:

6. Forfeiture of the property described in this complaint is not excessive.
  a. There is a close nexus of the property to the extensive and continued criminal conduct of the claimant in this case.
  b. The value of the property forfeited does not grossly exceed the potential fines and fees in this case.
  c. The forfeiture will not significantly impact other residents of the property since all but one have also been implicated in the criminal conduct giving rise to forfeiture.
  d. The forfeiture is the result of extensive, serious conduct by the claimant which presented significant threat of harm and cost to society.
  e. Forfeiture of this property does not impose hardship upon the claimant that is more extensive or severe than would have been imposed for other, equally serious conduct, under the laws of the State of Utah.
  f. Forfeiture of property established to have been an instrumentality for the sale of drugs is authorized by virtually every state and federal government.

or financial condition." *Id.* To determine the defendant's culpability, that court looked at:

(1) whether the owner was negligent or reckless in allowing the illegal use of his property; or

(2) whether the owner was directly involved in the illegal activity, and to what extent; and

(3) the harm caused by the illegal activity, including (a) (in the drug trafficking context) the amount of drugs and their value, (b) the duration of the illegal activity, and (c) the effect on the community.

*Id.* at 986.

¶ 18 We believe these factors complement the *Solem* test. We realize that the judicial determination of the gravity of a particular offense, as the *Bajakajian* court indicated, is inherently subjective and imprecise. However, use of these factors in conjunction with the *Solem* test will lessen the subjectivity of the analysis, acting as effective gauges for the gravity of an offense.[9] Therefore, we hold that the *Solem* test, using the factors set forth above from *392 South 600 East* and *6380 Little Canyon Road* to complement the court's analysis, is the appropriate measure of excessiveness in this jurisdiction.[10]

¶ 19 One additional factor is necessary to complete an excessiveness analysis: the comparative punishment factor. "In considering an offense's gravity, the other penalties that the Legislature has authorized are certainly relevant evidence." *Bajakajian*, 524 U.S. at 332 n. 14, 118 S.Ct. 2028. In *Bajakajian*, the defendant faced a maximum fine of $250,000.00 plus five years' imprisonment. *See id.* These figures suggest, as the Court stated, that Congress, in authorizing these punishments, did not view the offense as trivial. *See id.* The actual sentence the defendant received was three years' probation and a $5,000.00 fine. *See id.* at 324, 118 S.Ct. 2028. The Court continued, holding that

the maximum fine and Guideline sentence to which respondent was subject were but

a fraction of the penalties authorized ... undercuts any argument based solely on the statute, because they show that respondent's culpability relative to other potential violators of the ... provision—tax evaders, drug kingpins, or money launderers, for example—is small indeed. This disproportion is telling. . . .

*Id.* at 332 n. 14, 118 S.Ct. 2028. Finding disproportionality, the Court held full forfeiture would violate the Excessive Fines clause, and thereby affirmed the lower courts' rulings and rejected the government's appeal. *Id.* at 335, 118 S.Ct. 2028

¶ 20 Including this factor in the final test makes sense. After all, two separate individuals, convicted of an "identical" crime may receive vastly different sentences based on inherently individualized facts. During sentencing, the defendant's culpability is evaluated, and punitive measures are meted out accordingly. The harsher the sentence, fines, and penalties a defendant receives, the less likely it is that a forfeiture may be grossly disproportionate. If a defendant receives only a small percentage of the "maximum" possible penalty, it is more likely—although still not dispositive—that the forfeiture may be constitutionally excessive.

¶ 21 In short, a court must look at four main factors:

(1) the gravity of the particular offense;

(2) the harshness of the forfeiture;

(3) the sentences imposed on other criminals in the same jurisdiction; and

(4) the sentences imposed for commission of the same crime in other jurisdictions.

In gauging the gravity of the offense (factor (1) above), a court should take into consideration:

(a) the harm caused by the illegal activity, including (i) (in the drug trafficking context) the amount of drugs and their value, (ii) the duration of the illegal activity, and (iii) the effect on the community; and

---

9. We note that none of these factors, taken individually, is dispositive. These factors should be considered and weighed together.

10. The first two factors used in *6380 Little Canyon Road* to determine culpability are more concerned with establishing instrumentality. We therefore will not include these two factors in our proportionality test.

(b) the actual sentence the defendant received as a result of the offense compared to the maximum punishments authorized.

In judging the harshness of the forfeiture (factor (2) above), a court should look at:

(a) the fair market value of the property;

(b) the intangible, subjective value of the property, e.g., whether it is the family home; and

(c) the hardship to the defendant, including the effect of the forfeiture on defendant's family or financial condition.

*2. The test as applied to the instant case*

¶ 22 Factual findings made by trial courts in conducting excessiveness inquiries must be accepted unless clearly erroneous. *See Bajakajian,* 524 U.S. at 331 n. 10, 118 S.Ct. 2028 (citing *Anderson v. Bessemer City,* 470 U.S. 564, 574–75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). However, the question of whether a fine is constitutionally excessive requires the application of a constitutional standard to the facts of the individual case. In that context, de novo review of the question is appropriate. *See id.* (citing *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

¶ 23 The police seized from the defendant property less than two pounds of marijuana in three searches within eighteen months, with a street value of approximately $7,200.00. The trial court found that "[f]orfeiture of this real property has served a remedial purpose of removing this drug house from the stream of narcotic commerce, thereby serving the public by removing a drug safehouse from its ongoing criminal use, and by cleansing the site of significant and ongoing drug distribution activities." The trial court concluded that the "forfeiture is the result of extensive, serious conduct by the claimant [Cannon] which presented significant threat of harm and cost to society."

¶ 24 We do not condone any degree of drug trafficking; we recognize the great cost the State incurs in investigating, pursuing, and convicting offenders. We also understand the broad-scale effect of drug trafficking on society. As the trial court observed:

"The use and sale of controlled substances is one of the single most serious factors affecting and utilizing the resources" of the courts and the criminal justice system, both on the state and federal level. However, these findings and conclusions are not sufficient to support this forfeiture in view of other factors.

¶ 25 Measured by any standard, Cannon's drug operation was small, involving possession of less than two pounds of marijuana for sale in an eighteen month span. The trial court apparently agreed with this assessment at the time of trial when Cannon was placed on probation, although a jury had found her guilty of three felonies and a misdemeanor on charges stemming from the first search of her home. *See supra* note 1. The court allowed her to remain on probation after being convicted of an additional felony resulting from the second search. Cannon's actual fines and surcharges imposed on charges arising out of the first and second searches [11] totaled only $4,625.00. Cannon was also subject to $5,035.10 as a tax or penalty for possessing nonstamped illegal drugs. In sum, the actual fines, surcharges, and penalties imposed amounted to $9,660.10.

¶ 26 The State argues that Cannon faced "maximum possible penalties" of approximately $130,425.00 and "substantial" prison time. It repeatedly stresses these "maximum possible penalties," contending that these amounts should be used for measurement, as opposed to the actual penalties. The trial court also used these theoretical figures extensively in addressing the gravity of Cannon's offenses in its findings of fact and conclusions of law. The trial court on remand declared simply that the "value of the property forfeited does not grossly exceed the potential fines and fees in this case."

¶ 27 The State argues that this fact alone shows that the forfeiture is not grossly disproportionate. However, the State does not provide any legal support for its comparison of theoretical maximum penalties with the

---

11. Charges arising out of the third search were dismissed.

value of the forfeited property.[12] While reference to the maximum penalties is helpful in determining the gravity of the offenses, it has limited relevance in determining proportionality. Here, the trial court placed too much reliance on the maximum penalties in its analysis of proportionality instead of focusing on the actual fines and penalties imposed.

¶ 28 When we compare the (1) gravity of Cannon's conduct; (2) the actual fines, surcharges, and penalties of $9,660.10 imposed; and (3) her probation on the prison and jail sentences, with the value of the forfeited real property at approximately $80,000.00, we must conclude that there is a gross disproportionality here under the standards set forth in *Bajakajian*, and the forfeiture cannot be sustained.

## II. JUDICIAL NOTICE AS DUE PROCESS VIOLATION

¶ 29 Cannon contends that the trial court violated her due process rights by taking judicial notice of the second and third searches of the defendant property as well as the resolution of criminal charges stemming from the second search. It is unnecessary to reach this question. In our above analysis of disproportionality, we have considered the controverted evidence regarding the second and third searches, but determined that the totality of all evidence does not raise Cannon's offenses to a level sufficient to overcome the disproportionality.

¶ 30 We additionally do not need to reach Cannon's contention regarding double jeopardy.

## CONCLUSION

¶ 31 Based upon the foregoing analysis, we conclude that assuming the house was an instrumentality of the defendant's drug offenses, the second prong of the "excessive fine" analysis is not met. The forfeiture of the defendant property is grossly disproportionate. Having decided the case on this

basis, appellant's other arguments on appeal are rendered moot.

¶ 32 Judgment reversed.

¶ 33 Associate Chief Justice DURHAM, Justice ZIMMERMAN, and Justice RUSSON concur in Chief Justice HOWE's opinion.

¶ 34 Justice STEWART concurs in the result.

12. In fact, at oral argument, upon being asked whether there was case law from which they derived this test, counsel for the State admitted that "I'm not sure that we relied on a case when we came up with our idea. I think that was just something we thought of."