2000 UT 67

**STATE of Utah, By and Through the UTAH AIR QUALITY BOARD, Plaintiff and Appellee,**

v.

**The TRUMAN MORTENSEN FAMILY TRUST and Roxane Jensen–Daley, Defendants and Appellants.**

No. 990088.

Supreme Court of Utah.

Aug. 18, 2000.

Jan Graham, Att'y Gen., M.M. Hubbell, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Joseph W. Rohan, Paul M. Halliday, Jr., Salt Lake City, for defendant.

DURHAM, Justice:

¶ 1 This is an appeal by the defendants, the Truman Mortensen Family Trust and Roxanne Jensen, alleging that the trial court erred in imposing a $23,000 fine against them for violating the state's asbestos regulations. We affirm.

## BACKGROUND

¶ 2 Roxanne Jensen, also known as Roxanne Jensen–Daley (Ms. Jensen), is the trustee, contact person, and party responsible for administering the Truman Mortensen Family Trust, which owns various properties located in Utah and Idaho. At the time of the events giving rise to this lawsuit, one such property managed by Ms. Jensen was the Truman apartment building, located at 290 East Truman Avenue, Salt Lake City, Utah. This building contains approximately nine units, all accessible via a central hallway and stairway.[1]

¶ 3 On January 7, 1997, the Environmental Health Division of the Salt Lake County Health Department (Health Department) inspected the building and found various violations of Health Department standards. Before leaving, the health inspectors took a sample of the textured ceiling located over the building's central hallway for testing. Analysis showed that the ceiling contained 3% Chrysolite, a material containing carcinogenic asbestos, and the Health Department so informed Ms. Jensen.

¶ 4 On January 16, 1997, Ms. Jensen hired two men to "repair" the ceiling of the central stairway and hallway. Later that day, Bowen Call (Inspector Call), an inspector for the Utah State Division of Air Quality (DAQ), arrived on the scene and found the workers removing 600 to 800 square feet of dry and brittle asbestos material from the central hallway ceiling. Dust from the ceiling was

visible in the air and piled several inches deep on the floor. Inspector Call confronted the men and they responded that Ms. Jensen had instructed them to remove the ceiling. Although the workers were engaged in the removal of material containing asbestos, they had not been trained in proper asbestos handling techniques, used proper respiratory and safety equipment, taken precautions to control the asbestos dust or fibers, or evacuated the building.

¶ 5 Five days later, Inspector Call returned to the site and again found that asbestos had been improperly handled. In particular, the asbestos had been partially scraped off the ceiling but had not been completely removed. Ms. Jensen was present this time, and Inspector Call questioned her about the disposal of the asbestos. She responded that she did not know where the majority of the asbestos had been taken or how it had been disposed of. Inspector Call gave her verbal instructions concerning the danger of asbestos and told her that it could not be cleaned up with a vacuum cleaner. He told her that a certified contractor using specialty equipment had to be hired to remove and dispose of the dangerous substance. Inspector Call then left the scene and returned to his office at DAQ, where he received a phone call from a tenant at the Truman apartment building stating that Ms. Jensen had begun to clean up the asbestos with her vacuum cleaner.

¶ 6 On February 13, 1997, the DAQ Board issued the Truman Mortensen Family Trust and Ms. Jensen a "Notice of Violation and Order to Comply or Cease and Desist" (Notice and Order) for violations of the asbestos regulations found in R307–1–10, R307–1–2.1, and R307–1–8.61 of the Utah Administrative Code. The Notice and Order was a five page document including a cover-page stating that it was being issued by DAQ. Specific asbestos violations were outlined in the document, including Ms. Jensen's failure to (1) submit written notification of asbestos removal, (2) use required work practices, (3) collect,

---

1. Ms. Jensen is responsible for these apartments notwithstanding the fact that she has been declared mentally disabled and receives 100% disability payments from the Federal Social Security Administration.

package, transport, and dispose of asbestos containing materials as required, (4) use required asbestos removal and disposal techniques, and (5) ensure site supervisors and workers had received asbestos training. Finally, the document detailed that it was to become effective immediately, that failure to comply could result in penalties, and that it would become final within thirty days of receipt unless a hearing was requested in writing.

¶ 7 DAQ attempted to inform Ms. Jensen of the Notice and Order by mailing her a copy via certified mail. Specifically, DAQ placed the Notice and Order in the mail on February 13, 1997, addressing it to the address Ms. Jensen had given Inspector Call. The Notice and Order was returned as undeliverable. DAQ continued its effort to notify Ms. Jensen by re-mailing the Notice and Order four or five times, and also made several attempts to deliver it personally to Ms. Jensen's house. Finally, Inspector Call found a new address for Ms. Jensen and re-mailed the Notice and Order to her via certified mail. Ms. Jensen acknowledged receipt on April 9, 1997.

¶ 8 On April 6, 1997, three days before she received the Notice and Order, Ms. Jensen had sent a letter to Sharleen Hansen of the Occupational Safety and Health Division of the State of Utah Health Department (OSHD) in response to a notification of penalty that she received from OSHD on March 10, 1997. In the letter, she requested instructions on how to dispose of the materials, apologized for having caused the problem, and expressed her wish that the penalty be reduced. Ms. Jensen did not mention or request a hearing in the letter. Ms. Jensen alleges that when she received the Notice and Order from DAQ on April 9, 1997, she mistakenly believed that DAQ was the same agency as OSHD, and thus she was not required to take any further action regarding the Notice and Order because her previous letter served as an effective response.

¶ 9 In October, 1997, the State filed a complaint in the Third District Court seeking to enforce the Notice and Order, which the State alleged had become final because of Ms. Jensen's failure to respond. In March 1998, the State moved for summary judgment. Ms. Jensen opposed the motion on the grounds that (1) she had requested a hearing in her April 6, 1997, letter, sent to the wrong agency, (2) the notice given by DAQ was deficient because it did not adequately disclose the proper procedures for responding, and (3) she had subsequently complied with the Notice and Order and thereby was entitled to defend against the imposition of a fine under Utah Code Ann. § 63–46b–19(3)(c)–(d) (1997).

¶ 10 The trial court rejected Ms. Jensen's arguments and granted the State summary judgment, ruling that Ms. Jensen failed to respond to the Notice and Order properly delivered by the State. However, the trial court declined to grant the State's claim for $41,000 in penalties and fees as a matter of summary judgment, and chose instead to give the parties an opportunity to negotiate the amount of the penalty.

¶ 11 The parties met to discuss the amount of the fine in October 1998. The State offered to lower the fine to $23,000, and stated that a further reduction based on Ms. Jensen's ability to pay might be available, provided she could document her lack of resources by producing tax returns for the previous three years. Ms. Jensen refused to produce such records, and responded with a counteroffer involving no monetary penalty, but rather a promise that she would not purchase or manage any more apartment buildings. Ultimately, because no compromise was reached, the trial court conducted an evidentiary hearing to determine the appropriate penalty.

¶ 12 At the hearing, the State claimed that a penalty of $23,000 was fair, given that Ms. Jensen had exposed a number of individuals to asbestos and that the asbestos had still not been properly removed from her building. Ms. Jensen argued that the fine was excessive considering her disability and lack of funds. Also, she asserted that the fine was impermissibly excessive because it was nearly five times the amount of equity she owned in the building.

¶ 13 The court rejected Ms. Jensen's testimony on the ground that it lacked credibility

and assessed a penalty of $23,000. The court also instructed Ms. Jensen that if she wanted further consideration of a reduction of the fine, all she had to do was produce her tax documents. Ms. Jensen refused to produce her financial statements, choosing instead to appeal the decision.

## ANALYSIS

¶ 14 Ms. Jensen raises two issues on appeal, which we will discuss sequentially: (1) the trial court's grant of summary judgment; and (2) the amount of the penalty assessed.

### I. SUMMARY JUDGMENT

#### A. Adequacy of the Notice

¶ 15 Ms. Jensen argues that summary judgment was improperly granted because there remain disputed facts regarding the notice she received from DAQ. Specifically, she argues that there are disputed facts involving (1) the clarity of the Notice and Order issued by DAQ in light of the fact that, as her brief asserts, she "was besieged by a myriad of officials from various State agencies, local and county government and the Federal government," and (2) the adequacy of her letter to OSHD as a response to the Notice and Order.

¶ 16 Ms. Jensen correctly points out that summary judgment is only granted if no genuine issues of material fact exist and if the moving party is entitled to a judgment as a matter of law. *See* Utah R. Civ. P. 56(c); *see also Glencore, Ltd. v. Ince,* 972 P.2d 376, 379 (Utah 1998). However, we disagree with her assertion that there are genuine issues of material fact regarding the notice given to her.[2]

¶ 17 First, DAQ did all that it was required to do in notifying Ms. Jensen of the violations. According to the standard set forth in *Anderson v. Public Service Commission of Utah,* 839 P.2d 822 (Utah 1992), an administrative agency's obligation to provide proper notice is satisfied by sending the doc-

uments via certified mail. *See id.* at 826. DAQ is not required to ensure that persons read the documents or have actual notice of their existence or contents. *See id.* DAQ met the legal requirement by placing the document in the mail on February 13, 1997, directed to an address Ms. Jensen had provided to Inspector Call. This document was returned by the post office, and then DAQ exceeded its legal obligations with its continued attempts to mail and hand-deliver to Ms. Jensen a copy of the Notice and Order. Because of these extra efforts, Ms. Jensen actually received a copy of the Notice and Order on April 9, 1997. DAQ cannot be charged with inadequate notice if Ms. Jensen failed to read or fully understand its contents.

¶ 18 Second, contrary to Ms. Jensen's assertions, we believe that the words of the Notice and Order were not ambiguous or inadequate to inform her of the nature of the proceedings. The Notice and Order was in fact clear and easily understandable. For example, the document unequivocally stated that it was "effective immediately and shall become final unless, within thirty (30) days of receipt ... [defendant] requests, in writing, a hearing" and that a "civil penalty of up to $10,000 per day for each day" that it was violated could be imposed. We agree with the trial court's conclusion that the Notice and Order received by the defendant was clear and complete in its information and instructions.

¶ 19 Finally, we disagree with Ms. Jensen's contention that her letter to the OSHD served as a response to the Notice and Order. It is manifestly impossible for a letter written three days before the Notice and Order was even issued and sent to a completely different department to serve as a response to the Notice and Order issued by DAQ. Moreover, even if we were to credit Ms. Jensen's characterization of the letter as a response to the asbestos problem at her apartment building, we note that her letter to OSHD did not request a hearing, nor did

---

**2.** We rely only on the undisputed facts regarding the delivery, content, and response to the Notice and Order issued to Ms. Jensen. There are other disputed facts in this controversy, such as whether Ms. Jensen instructed the workers to "re-

move" or "repair" the ceiling. However, summary judgment was granted to the State because of Ms. Jensen's failure to promptly respond to the Notice and Order. All of the facts regarding these events are undisputed.

it attempt to contest the allegations of the Notice and Order in any way.

¶ 20 Thus, we agree with the trial court and find that no genuine issues of material fact exist relating to the Notice and Order given to Ms. Jensen that would preclude the granting of summary judgment for the State.

### B. Defenses Under Utah Administrative Procedures Act

■ ¶ 21 Ms. Jensen also contends that the grant of summary judgment improperly denied her the opportunity to assert defenses outlined in the Utah Administrative Procedures Act (UAPA) found in Utah Code Ann. § 63–46b–19(3).[3] However, before the provisions of the UAPA are activated, the proceedings and orders of the administrative agency in question must have been validly challenged. Section 63–46b–1(2)(k) states that "[t]his chapter does not govern ... the issuance of any notice of violation or order under ... Title 19, Chapter 2, Air Conservation Act ... except that this chapter governs any agency action commenced by any person authorized by law to contest the validity or correctness of the notice or order." In other words, the protections of the UAPA, including those afforded in section 63–46b–19(3), do not become operative until the person "contest[s] the validity or correctness of the notice or order" by requesting a hearing on the matter.

■ ¶ 22 Ms. Jensen did not request a hearing or in any way contest the validity of the Notice and Order within the appropriate time period. The warnings on the Notice and Order stated that she had thirty days to respond or it would become final, and she did not respond. Thus, the Notice and Order became final and Ms. Jensen never acquired the right to raise any defenses under section 63–46b–19(3). *See Career Serv. Review Bd. v. Utah Dep't of Corrections*, 942 P.2d 933, 938–39 (Utah 1997) (holding that when administrative agency's order has become final, defendant cannot assert section 63–46b–19(3)

defenses or argue that issues surrounding finalized order are still in dispute).

¶ 23 Therefore, the trial court's grant of summary judgment did not deny Ms. Jensen the right to assert valid defenses under the UAPA.

### II. AMOUNT OF THE PENALTY

¶ 24 After finding that her actions warranted punishment, the trial court imposed a fine of $23,000 on Ms. Jensen. While conceding that "$23,000 was a lot of money," the trial court imposed this amount because it concluded that Ms. Jensen's conduct in dealing with asbestos in the apartment building warranted it. Ms. Jensen challenges the amount of this fine on the grounds that the trial court erred in its application of the rules governing civil penalties and that the fine is impermissibly excessive under both the Utah and United States Constitutions.

### A. The Trial Court's Application of the Rules for Imposing Penalties

¶ 25 Rules 307–130–1, –2, and –3 of the Utah Administrative Code outline both the procedures for implementing fines for violating the asbestos laws and the extent of such fines. These rules are patterned after the national standards set by the Federal Environmental Protection Agency. The purpose of the rules is to establish reasonable and appropriate penalties for violations of the asbestos laws based on the nature and extent of the violations, the economic benefit of noncompliance, and adjustments for specific circumstances. According to rule 307–130–2 of the Utah Administrative Code, each alleged regulatory violation is classified by DAQ as either type A, B, C, or D, types A and B being the most egregious and carrying the greatest fines, while types C and D are the least serious and usually carry no fines. *See* Utah Admin. Code R307–130–2(1) to (4). Here, Ms. Jensen was cited for five specific violations, two of which were considered type A, and the other three type B.

---

**3.** The relevant portion of the statute states: "In a proceeding for civil enforcement of an agency's order, in addition to any other defenses allowed by law, a defendant may defend on the ground

that: ... (c) the defendant has not violated the order; or (d) the defendant violated the order but has subsequently complied." Utah Code Ann. § 63–46b–19(3)(c), (d).

¶ 26 Ms. Jensen asserts that the cited violations should have been characterized as no more serious than type C violations, but gives no reasons to support this conclusion. There was no evidence in the record that DAQ or its inspectors wrongly or mistakenly classified the asbestos situation at the Truman apartments. In addition, considering the proven danger and carcinogenic effects of asbestos, we agree with the trial court that conduct that results in asbestos dust so concentrated that it is visible in the air and piled several inches high on the floor of an occupied apartment building is serious and egregious behavior worthy of stiff environmental sanctions.

¶ 27 Ms. Jensen also argues that the trial court failed to consider mitigating factors listed in rule 307–130–3 that would reduce or suspend the penalty. Specifically, she asserts that the trial court failed to credit her for good faith efforts to comply with the regulations, or give her some leeway because of her mental disability. *See* Utah Admin. Code R307–130–3(1). Yet, according to Inspector Call's testimony at the penalty hearing, the asbestos had never been properly cleaned up and removed from the building. There can be no credit for good faith efforts to comply if there is *no evidence* that Ms. Jensen ever took steps to remedy the situation.

¶ 28 Ms. Jensen asserted before the trial court that her mental disability (on which no information appears in the record beyond the fact that she is 100% disabled for Social Security purposes) should be a factor in mitigation. Although her condition may warrant sympathy, it cannot in this case serve as a defense to the imposition of sanctions. We agree with the trial court's assessment:

> Anyone that has the sophistication to buy and sell two $300,000 apartment buildings has to have enough savvy to know who they are dealing with and when they are dealing with it and what its all about.... It is obvious ... that she's been involved in this Truman Mortensen Family Trust as a trustee. Certainly, she must have some competent ability to manage properties. Maybe it's something that she's doing on her own and keeping it out of her own personal ownership .... I don't know anything about this trust, but it just seems ... that you don't buy and sell and manage apartment buildings without some ability to deal with people that understand what's going on and making sure that you have the right licenses and whatever else.

Also, the public policy implications of protecting tenants from the dangers of asbestos-filled units, no matter what the limitations of their landlords may be, require us to hold Ms. Jensen accountable for her actions. Landlords have serious responsibilities to their tenants, including the duty to ensure that the housing rented is reasonably safe and suitable for the intended use. *See Stephenson v. Warner*, 581 P.2d 567, 568 (Utah 1978) (holding that "[i]t is not to be doubted that a landlord is bound by the usual standard of exercising ordinary prudence and care to see that premises he leases are reasonably safe and suitable for intended uses"). If Ms. Jensen's disability prevents her from adequately performing her role as a landlord, she should perhaps discontinue her activities in that enterprise. She may not, however, be excused from the legal requirements necessary to protect the health and safety of her tenants, or from the sanctions imposed for her failure to do so.

¶ 29 Finally, Ms. Jensen asserts that the trial court failed to consider the mitigating factor of her lack of financial resources. However, Ms. Jensen has not provided the necessary tax records and financial documentation to demonstrate any such lack. The State has consistently shown a willingness to work with Ms. Jensen, and in fact has already reduced the fine from $41,000 to $23,000. The State has also declared it is willing to reduce the fine further if Ms. Jensen's financial records demonstrate an inability to pay.

¶ 30 The record shows that Ms. Jensen was given several opportunities to produce the relevant documents. For example, the State requested the documents before the penalty hearing. (Inspector Call told the court that the request "didn't seem like it was received very well.") At the hearing, the trial judge instructed Ms. Jensen that if

she was attempting to argue that she could not pay the fine, she had to disclose her financial information. Even as late as March 1999, nearly six months after the hearing, the State requested "information concerning the Truman–Mortensen [sic] Family Trust, the Mortensen–Jensen [sic] Family Trust, the 1031 Exchanges, the Malad, Idaho property and other information." We acknowledge that Ms. Jensen was not required to disclose such information. However, because she withheld it, she is now estopped from arguing that her lack of financial resources should have been considered when setting the amount of the penalty.

### B. Claim that the Fine Violates the Excessive Fines Clause

■■■ ¶ 31 The Eighth Amendment to the United States Constitution guarantees that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." A nearly identical provision is found in Article 1, section 9 of the Utah Constitution: "Excessive bail shall not be required; excessive fines shall not be imposed; nor cruel and unusual punishments be inflicted." The purpose of such provisions is to prevent the government from abusing its power to punish by the imposition of harsh and unfair payments. *See Browning–Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 266–67, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). Ms. Jensen asserts that the imposed fine is "clearly excessive" in violation of these protections.

¶ 32 Although asserting that the fine is excessive under both state and federal law, Ms. Jensen failed to adequately brief or discuss the issue under the Utah Constitution. Accordingly, we will address the constitutional excessiveness of the fine under federal law.

¶ 33 We conclude that the proper analysis as to whether a fine violates the Excessive Fines Clause is outlined in *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998).[4] After establishing the principles governing the Excessive Fines Clause, the *Bajakajian* court ruled that forfeiture of $357,144 for violating a statute prohibiting transportation of more than $10,000 out of the country was unconstitutional. *See id.* at 324–26, 334, 118 S.Ct. 2028. The fact that this case deals with civil forfeitures rather than fines is not relevant for our purposes because forfeitures and fines differ only in that a forfeiture is a payment in kind. *See id.* at 328, 118 S.Ct. 2028.

■■■■ ¶ 34 According to the Court, "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount ... must bear some relationship to the gravity of the offense .... [A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.* at 334, 118 S.Ct. 2028. *Bajakajian* enunciates two guiding principles that courts should consider in determining whether a fine is grossly disproportional: The first is that "judgments about the appropriate punishments for an offense belong in the first instance in the legislature.

---

**4.** Ms. Jensen argues that the appropriate test is outlined in *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). However, the Supreme Court specifically stated in *Austin* that it was not "establish[ing] a multifactor test for determining whether a forfeiture is constitutionally 'excessive.'" *Id.* at 622–23, 113 S.Ct. 2801.

The State argues that *Hudson v. U.S*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), abrogates *Austin* and establishes the proper analysis for determining whether a fine is unconstitutionally excessive. We find it difficult to understand how the State can argue that *Hudson* rejected *Austin*, given the fact that the *Hudson* court cited favorably to *Austin* and used it as support for its holding. *See Hudson*, 522 U.S. at 102–03, 118 S.Ct. 488. More importantly, *Hudson* was decid-

ed under the Double Jeopardy Clause of the Fifth Amendment, not the Excessive Fines Clause of the Eighth Amendment. The test that it outlines relates to whether a civil fine can be classified as a criminal punishment, which can be important when dealing with Bill of Rights' protections granted to criminal defendants, but does not address when a fine is unconstitutionally excessive under the Eighth Amendment. *See Austin*, 509 U.S. at 610 n. 6, 113 S.Ct. 2801; *see also United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980) (applying same test as *Hudson* outlines and holding that since imposed fine was not "criminal" punishment, Fifth Amendment guarantee against self-incrimination in criminal trials had not been violated).

The second is that any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise." *Id.* at 336, 118 S.Ct. 2028. Since both of these factors "counsel against requiring strict proportionality between the amount of a punitive forfeiture and the gravity" of an offense, it seems clear that courts should declare the amount of a fine unconstitutional only if "it is grossly disproportional to the gravity of the offense." *Id.* at 336–37, 118 S.Ct. 2028.

¶ 35 In applying this standard to the present case, we cannot say that the proposed fine is grossly disproportional to Ms. Jensen's conduct.[5] Through an administrative agency, the legislature has set the bounds for appropriate penalties for asbestos violations by giving recommended penalties for different classes of violations and mitigating factors to be considered in special circumstances. These administrative rules have the same effect as if they were passed by the legislature. *See* Utah Code Ann. § 63–46a–2(16) (1997).

¶ 36 The rules recommend a fine of up to $41,000 for Ms. Jensen's conduct. We believe that since the applicable rules recommend a punishment of up to $41,000, a fine of $23,000 is not excessive. While we agree with the trial court's concession that $23,000 is "a lot of money," especially considering that Ms. Jensen has little equity in the apartment house, we note that it is not appropriate to compare the fine to the value of Ms. Jensen's equity in the building, but rather to the nature of her conduct in dealing with asbestos in her apartment building. That conduct has exposed tenants and other persons to significant amounts of a dangerous and carcinogenic substance. We cannot conclude that the amount of the fine is grossly disproportionate to such behavior.

¶ 37 Thus, we conclude that the fine is not grossly disproportional to the gravity of the offense and does not violate the Excessive Fines Clause. The fine is within the limits set by the legislature, and is reasonable considering the seriousness of Ms. Jensen's actions.

## CONCLUSION

¶ 38 The trial court properly granted summary judgment to the State because there was no genuine issue of material fact regarding the violations of the law or Ms. Jensen's response to the Notice and Order. Ms. Jensen did not follow proper procedures when she had asbestos removed from her apartment building, for which she was issued a Notice and Order. She did not respond to that Notice, and the Order became final. The amount of the penalty finally imposed ($23,000) is not unconstitutionally excessive, at least in the absence of any showing of inability to pay. Therefore, the decision of the trial court is affirmed.

¶ 39 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURRANT, and Justice WILKINS concur in Justice DURHAM's opinion.

---

5. We disagree with Ms. Jensen's assertions that the trial court did not rule on her objection that the fine was excessive. Our reading of the record shows that the trial judge addressed the objections correctly and properly stated the rule governing the excessiveness of fines:

I don't think the fine is based on what the property value is or how much someone might be able to net after selling it. I don't think that's what the fines are based on .... I think they are based on conduct, failure to comply with certain regulations pertaining to asbestos.