# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1523SI

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the Southern District |
| | * | of Iowa. |
| James Lynn Moyer, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 8, 2002
Filed:  December 27, 2002  (Corrected: 1/07/03)

_____

Before BOWMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

James Lynn Moyer was convicted of two counts related to bank fraud and three counts related to embezzlement from his company's pension fund.  All of these crimes stem from Mr. Moyer's purchase of a wholesale meat company in central Iowa.  On appeal, defendant argues that the District Court[1] erred in failing to sever counts for trial, that the evidence was insufficient on one charge, that the court-ordered forfeiture was excessive, and that the court-ordered restitution was not

_____

[1]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

supported by the record. We reject his claims and affirm the judgment of the District Court.

## I.

In the fall of 1996, Mr. Moyer, who owned Allied Wholesale Meats, entered into negotiations to purchase his prime competitor, Smith's Wholesale Meats Company. He negotiated a purchase price of a little more than $1.7 million. To procure the needed funds, he negotiated a loan with Boatmen's Bank. Both defendant and Smith's Meats would be liable to repay the loan, and the bank received a security interest in Smith's Meats' business vehicles. The bank also conditioned the loan on getting it guaranteed by the United States Small Business Administration (the SBA). The SBA agreed to guarantee the loan if Mr. Moyer would make an initial capital investment of at least $300,000 in the company, as the SBA requires a sizable personal investment before it will guarantee any loan. Defendant initially expected his brother to raise this capital. When the closing arrived, Mr. Moyer informed Boatmen's loan officer, Dan Ricke, that his brother was no longer willing to make the investment, leaving Mr. Moyer without the money to make the initial capital investment.

To raise the needed funds, defendant negotiated a short-term loan with the current owner of Smith's Meats, Don Wendl. The agreement made both defendant and Smith's Meats liable to repay the loan. Defendant disclosed to Mr. Ricke that he planned to borrow the money from Mr. Wendl but apparently failed to inform him that the company would be liable on the loan. Mr. Ricke informed Mr. Moyer that he needed proof of a personal contribution to show to the SBA, so defendant needed to write a personal check to the bank for $366,390.68. This caused some difficulty because neither Mr. Moyer nor Mr. Wendl had this much cash on hand. To solve this problem, the three men reached the following agreement. Defendant would write the check to the bank, but Mr. Ricke would hold off cashing this check. The bank would

then disburse the loan proceeds to Mr. Wendl, who would then give Mr. Moyer the money to cover his initial check to the bank. Mr. Ricke would then cash that initial check. The net effect was that defendant had wholly financed the purchase of the business without making a personal capital investment. He owed $1.4 million to the bank and $366,390.68 to Mr. Wendl.

Defendant paid the debt to Mr. Wendl in full over the next few months. As a result, he experienced a cash-flow shortage for the business. He asked for and received two additional working-capital loans from the bank, totaling $500,000. Eventually the bank refused to extend him any more credit. At the same time, he transferred title to three of Smith's Meats' business vehicles into his own name. He transferred title to a fourth vehicle to another person some time later. These vehicles were the same ones that were encumbered under the initial loan agreement, although the bank had failed to perfect its security interest in them. Mr. Moyer made these transfers without the bank's knowledge or consent.

As a result of the bank's refusal to extend him further credit, Mr. Moyer continued to experience a cash-flow shortage. Because of this shortage, he fell prey to what has become known as the Nigerian Bank Scam. In June of 1998, defendant received a letter from one Edward Kadiri, stating that he was associated with the Nigerian National Petroleum Corporation, and that he needed help moving almost $30 million out of Nigeria. The letter indicated that if Mr. Moyer would help him do so, he would be entitled to 25 per cent. of the money. Defendant responded to Mr. Kadiri and ultimately transferred nearly $1.4 million to various bank accounts to facilitate the transfer. He of course never received a dime back. To raise a portion of the investment money, Mr. Moyer sought and received a $66,000 loan from a local bank (not Boatmen's), using the vehicles that he had transferred into his name as collateral. The bulk of the investment capital came from private investors, however. To procure one such investor, he put up part of Allied Meats' pension fund as collateral.

-3-

When Mr. Moyer finally realized that he had been scammed, he cashed out $468,934 from the pension fund, without following the statutorily mandated termination procedures. He had the company that had been managing this money deposit it into his personal checking account, which he fraudulently represented to the managing company as a pension checking account. He then transferred this money to one of his personal creditors. Some time later, he went through the proper procedure to terminate the Allied pension plan. He ultimately forewent his entitlement under the plan and paid in another $15,388 so that all other participants could receive their benefits.

Mr. Moyer was indicted on six counts. He was charged with concealing a material fact from the Small Business Administration, 18 U.S.C. § 1001(a)(1), committing bank fraud, 18 U.S.C. § 1344(1), carrying over $10,000 to a foreign country without reporting it, 31 U.S.C. §§ 5316(a)(1)(A) and 5322(a), embezzling from Allied's pension plan, 18 U.S.C. § 664, money laundering, 18 U.S.C. § 1957, and criminal forfeiture, 18 U.S.C. § 982. He was convicted on all counts except that of carrying currency abroad. He was sentenced to 60 months' imprisonment for the concealment count and 63 months for the bank fraud, embezzlement, and money laundering, the sentences to run concurrently. The District Court also ordered a forfeiture of $468,934 under the money-laundering count and restitution to the bank in the amount of $1,232,000. Defendant appeals to this Court, arguing that his trial should have been severed, that there was insufficient evidence to support his conviction for concealing a material fact, that the forfeiture order was excessive under the Eighth Amendment, and that the restitution order was not properly supported by the record. We reject these arguments and affirm his conviction and sentence.

II.

Mr. Moyer first argues that the joinder of all the counts against him in a single trial was error. He asserts that the first two counts (concealment and bank fraud)

-4-

should have been severed from the other four counts. This Court reviews the question of joinder de novo, United States v. Boyd, 180 F.3d 967, 981 (8th Cir. 1999), and the refusal of the District Court to sever the trial because of alleged unfair prejudice for abuse of discretion. United States v. Rock, 282 F.3d 548, 552 (8th Cir. 2002). Because this Court favors joinder of offenses against defendants in a single trial, the rules are construed liberally in favor of joinder. United States v. Darden, 70 F.3d 1507, 1526 (8th Cir. 1995).

In this case, the District Court did not err in joining defendant's offenses. All of the offenses arose out of his purchase of Smith's Meats. The first count arose out of his concealment of a material fact — his failure to make a capital investment — from the SBA. His failure to make a capital investment led to financial difficulties for the company almost from the outset. Counts two through six related to his attempts to solve these financial difficulties. As such, all of the charged offenses were parts of connected acts or transactions — thus allowing joinder. Fed. R. Crim. P. 8(a). Mr. Moyer argues that even if joinder was proper under Rule 8, the District Court should have severed the trial because of the threat of unfair prejudice posed by joinder. See Fed. R. Crim. P. 14. Specifically, he argues that the jury likely convicted him partly because the joinder of the numerous counts portrayed him as a bad person. He also alleges that the evidence on the stronger counts likely affected the jury's determination on the weaker counts. Mr. Moyer has failed to show that either of these kinds of prejudice occurred here. Moreover, that the jury acquitted him on one count undermines his theory that the jury could not separate the counts. The District Court did not abuse its discretion in refusing to find that there was sufficient threat of prejudice to mandate severance. We therefore affirm the District Court's decision not to sever his trial.

Mr. Moyer next argues that the evidence was insufficient to support his conviction for concealing a material fact from the SBA. In reviewing a conviction for sufficiency of evidence, this Court views the evidence in the light most favorable

to the verdict. United States v. Hawkey, 148 F.3d 920, 923 (8th Cir. 1998). Defendant's claim is that he informed the bank's loan officer of the arrangement he made to finance the initial capital investment and thus did not conceal anything from the SBA.[2] This argument fails because the loan officer is not the SBA. Mr. Moyer admits that he realized that the SBA was separate from the bank. Additionally, he realized that he wrote the check to the bank so that the SBA would believe that he made a personal capital investment. On these facts, Mr. Moyer cannot now claim convincingly that he did not intend to deceive the SBA. Therefore, we reject his argument that the evidence was insufficient on the concealment claim.

Mr. Moyer also challenges the constitutionality of the District Court's forfeiture order, claiming that the order was an excessive fine under the Eighth Amendment. We review his claim de novo. United States v. Bajakajian, 524 U.S. 321, 336-37 (1998). "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish . . .. We now hold that a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." Id. at 334 (citations omitted). This Court has concluded that if the value of the forfeited property is within the permissible range of fines under the sentencing guidelines, "the forfeiture almost certainly is not excessive." United States v. Sherman, 262 F.3d 784 (8th Cir. 2001).[3]

---

[2]As is indicated in the statement of facts, there is some question as to whether Mr. Moyer fully disclosed the terms of the short-term loan agreement. Because we reject this argument on other grounds, we need not address this issue.

[3]This opinion was initially vacated pending rehearing en banc by United States v. Diaz, 270 F.3d 741 (8th Cir. 2001) (en banc) (order). Following rehearing, the initial panel opinion was reinstated. United States v. Diaz, 296 F.3d 680 (8th Cir. 2002) (en banc).

In this case, the court-ordered forfeiture was half the amount of the permissible fine under the sentencing guidelines. Thus, the forfeiture is presumptively not excessive. Defendant maintains that, even though within the permissible range of fines, the forfeiture was excessive in this case because he did not harm anyone. He argues that he would have been entitled to any excess funds in the pension fund if he had terminated it legally, and that he made the pension plan whole when he terminated it properly. He argues that as a result no one was harmed by his embezzlement. Mr. Moyer is correct that none of the pension plan members was harmed; however, he ignores the fact that the government would have been entitled to an excise tax of 50 per cent. of the excess funds if he had not embezzled them. Thus, the government was harmed significantly. Of the $468,934 that he embezzled, the government would have received a sizable portion, likely nearing half, if he had terminated the plan legally. The question, then, is whether ordering forfeiture of money constituting approximately twice the harm to the government is grossly disproportional. We cannot find that it is. We therefore affirm the District Court's forfeiture order.

Mr. Moyer finally argues that the District Court's restitution order was not supported in the record. He alleges that the Court did not clearly explain how it came to the number that it reached. This Court reviews challenges to restitution orders for clear error. United States v. Young, 272 F.3d 1052, 1056 (8th Cir. 2001). We conclude that the District Court did not clearly err in ordering the restitution. The Court ordered restitution in the amount that an executive from the bank provided as the amount that it had lost on the loan. Moreover, the District Court chose the lowest of several loss totals provided. We conclude that the District Court did not err.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.