**COMMONWEALTH of Pennsylvania**

v.

**The REAL PROPERTY AND IM-PROVEMENTS COMMONLY KNOWN AS 5444 SPRUCE STREET, PHILADELPHIA and Elizabeth A. Lewis.**

**Appeal of: Elizabeth A. Lewis.**

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 2005.

Decided Jan. 6, 2006.

James A. Keller, Philadelphia, for appellant, Elizabeth Lewis.

Jonathan M. Levy, Philadelphia, for appellee.

BEFORE: COLINS, President Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

Before this Court, for the third time, Elizabeth Lewis appeals an order of the Court of Common Pleas of Philadelphia County sustaining the forfeiture of Lewis's residence. After remand from the Supreme Court, the trial court took evidence as to the value of Lewis's residence and concluded that the forfeiture was not grossly disproportional to the gravity of the offense.

On February 20, 1995, undercover police purchased crack cocaine and marijuana at 5444 Spruce Street, Philadelphia, which was owned by Lewis, who lived there since 1962.[1] A search warrant executed the next day at the address led to the seizure of five packets of crack cocaine in a pocketbook that also contained Lewis's personal identification documents and 11 packets

---

1. Lewis and her two brothers acquired title to the residence after the death of their parents. In 1991, Lewis bought her brothers' interest in the residence and became sole owner of the property. At the time of her arrest, Lewis lived there with her 23–year–old daughter and her granddaughter.

of marijuana and $20 cash in a cup in the kitchen. Lewis was arrested and charged with delivery of a controlled substance, possession of a controlled substance with intent to deliver, and knowing and intentional possession of a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act (Controlled Substances Act), Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101—780–179. On September 26, 1996, the trial court granted a Commonwealth petition to forfeit the Spruce Street property under the Controlled Substances Forfeitures Act (Forfeitures Act), 42 Pa. C.S. §§ 6801–6802.[2] On October 3, 1995, Lewis pleaded guilty to a single charge of possession with intent to deliver and received a sentence of 2 years of probation and a fine of $185. No other evidence of drug dealing or manufacture, such as scales, paper, cutting agents, sales records, were found during the search of Lewis's home.

When Lewis first appealed the forfeiture, we remanded because the trial court failed to apply the clear and convincing burden of proof required when a forfeiture is challenged as an excessive fine. *See In re King Properties,* 535 Pa. 321, 635 A.2d 128 (1993).[3] On remand the trial court again granted the forfeiture based on clear and convincing evidence of a pattern and practice of drug dealing at the Spruce Street address. Lewis appealed, challenging the constitutionality of the forfeiture as an excessive fine in violation of the Eighth Amendment, U.S. Const. amend. VIII, and Pa. Const. art. I, § 13. This Court again affirmed, relying on *United States v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). The Supreme

Court, rejecting this Court's application of *Bajakajian,* reversed and remanded to the trial court for a determination of the value of 5444 Spruce Street, with instruction that the value must be weighed against the gravity of Lewis's offense. *Commonwealth v. Real Property & Improvements Commonly Known as 5444 Spruce Street,* 574 Pa. 423, 832 A.2d 396 (2003).

After the second remand, the trial court conducted a valuation hearing on March 26, 2004. The trial court found that on February 20, 1995, Lewis sold drugs to undercover Philadelphia Police Officer Willie Jones; that the search conducted the next day turned up five packets of crack cocaine and 11 packets of marijuana in the residence, and one packet of marijuana on Lewis, who police returned to the residence after locating her in a neighborhood bar. The trial court credited the testimony of the police officer who conducted the search and that of Tarik Chapman, a juvenile who testified that he purchased illegal drugs from Lewis at the Spruce Street address several times a week and that if Lewis was not home, he purchased the drugs from her daughter. The judge rejected as not credible Lewis's testimony that she pleaded guilty to protect her daughter, who according to Lewis, was the real drug dealer.

On the issue of the property's value, the court credited the valuation of the Commonwealth's appraiser and adopted his valuation of the property at $25,000. The court rejected the appraisal of Lewis's expert as less accurate because he did not enter the premises, because the court rejected his characterization of the property as a duplex, and because he failed to pro-

---

**2.** The Forfeitures Act subjects to forfeiture real property used to facilitate any violation of the Controlled Substances Act.

**3.** Overruled in part by *Commonwealth v. Real Property & Improvements Commonly Known as 5444 Spruce Street,* 574 Pa. 423, 832 A.2d 396 (2003).

vide the court with documentation regarding the "similar" properties he used in his competitive market analysis. The court also rejected Lewis's subjective valuation of the property as irrelevant to its 1995 value.

Applying *Bajakajian*, the trial court concluded that the forfeiture of 5444 Spruce Street was not grossly disproportional to the gravity of the offense committed. Considering the value of the property to be between $25,000 and $40,000, the court found that the value of the property fell within the range of possible fines for the offense committed. The judge noted that selling crack to an undercover officer is punishable by a sentence of up to 10 years and a $100,000 fine; selling cocaine to a minor by a sentence of up to 20 years and a $100,000 fine; and sale of marijuana by a sentence of up to 5 years and a $15,000 fine. The court also considered the fact that the violation was part of a pattern of misbehavior and not an isolated incident and the obvious harm that resulted from Lewis selling drugs to neighborhood teenagers. The court rejected Lewis's argument that the gravity of the offense should be determined by the sentence imposed.

■ On appeal, Lewis argues that the forfeiture of her property constitutes an unconstitutionally excessive fine for a drug crime involving narcotics worth less than $80 and that warranted a fine of only $185 and no jail sentence. She challenges the trial court's determination that the Commonwealth's appraisal used the proper method for determining the property's value and that it failed to give weight to her subjective valuation. Our review of a forfeiture appeal is limited to determining whether the trial court's findings of fact are supported by substantial evidence and whether it abused its discretion or committed an error of law. *Commonwealth v. 648*

*West Mayfield Street*, 819 A.2d 1226 (Pa. Cmwlth.2003).

■ "To determine whether the excessive fines clause has been violated, a court must consider whether the statutory provision imposes punishment; and if so, whether the fine is excessive." *5444 Spruce Street*, 574 Pa. at 428, 832 A.2d at 399. An in rem forfeiture effected pursuant to the Forfeitures Act is punitive, *Id.*, and a punitive forfeiture violates the excessive fines clause if it is grossly disproportional to the gravity of the offense, *Bajakajian*, 524 U.S. at 336–37, 118 S.Ct. 2028; *5444 Spruce Street*, 574 Pa. at 432, 832 A.2d at 401. A court must compare the value of the property to the gravity of the offense, and the gravity of the offense may be measured by comparing the penalty imposed with the maximum penalty available; whether the violation was isolated or part of a pattern of misbehavior; and the harm that resulted from the crime charged. *Bajakajian*, 524 U.S. at 338–39, 118 S.Ct. 2028; *5444 Spruce Street*, 574 Pa. at 433, 832 A.2d at 402.

Lewis first challenges the trial court's adoption of the appraisal method used by the Commonwealth's appraiser. The trial court explained its acceptance of the Commonwealth's valuation: The Commonwealth's witness, Charles Mayfield, performed both a physical inspection of the inside and outside of the property and performed a market analysis using comparable properties in the Spruce Street vicinity. In contrast, the court found the appraisal of Lewis's appraiser, to be less accurate because he did not perform a physical inspection and mischaracterized the property as a duplex with two living spaces, one of which could be rented. Moreover, despite the acceptance of the Commonwealth's appraisal, the trial judge based her excessive fines analysis on a property value between $25,000 (the Com-

monwealth's appraisal) and $40,000 (the high figure of Lewis's appraisal). The trial court rejected as not credible Lewis's testimony about the value of the property, rejecting her subjective valuation as irrelevant. We agree. Making a property owner's subjective valuation the deciding factor would doubtless result in every forfeiture being ruled an unconstitutionally excessive fine. Lewis's challenge to the trial court's valuation of the property is without merit.

Lewis next argues that the forfeiture of her home was an excessive fine given the small amount of drugs found in her home, the fact that she received no jail time and a small fine, and her contention that the sale of illegal drugs was an isolated incident. She urges the Court to apply *Bajakajian* as did the Utah Supreme Court in *State v. Real Property at 633 East 640 North, Orem, Utah,* 994 P.2d 1254 (Utah 2000), *cert. denied sub nom. Utah v. Cannon,* 530 U.S. 1262, 120 S.Ct. 2718, 147 L.Ed.2d 983 (2000), wherein the defendant was convicted of possession of marijuana with intent to distribute, possession of cocaine, illegal drug tax, and possession of drug paraphernalia in connection with the possession of 2 lbs. of marijuana for sale over an 18–month period. The Utah court concluded that the forfeiture of the defendant's home was grossly disproportional after considering the following factors to determine the gravity of the offense: whether the owner was negligent or reckless in allowing the illegal use of the property, whether the owner was directly involved in the illegal activity, and the harm caused by the illegal activity, including the amount of drugs and their value, the duration of the illegal activity, and the effect on

the community. 994 P.2d at 1259. The court also considered the fair market value of the property (between $70,000 and $80,000) and the intangible, subjective value (i.e., whether it is a family home, the hardship to the defendant, and the effect of the forfeiture on the defendant's family). *Id.* In overruling the trial court, the Utah Supreme Court based its conclusion that the forfeiture was grossly disproportional on the findings that the drug operation was small and the trial court's sentence of probation and imposition of a light fine. The court rejected the State's contention that the court should consider the maximum possible penalties, rather than the actual penalties, in evaluating the gravity of the defendant's offense.

Although our Supreme Court did not authorize a particular approach to the excessive fines analysis or foreclose the application of any particular factors, *5444 Spruce Street,* 574 Pa. at 433 n. 7, 832 A.2d at 402 n. 7,[4] in the present case, the trial court in assessing the gravity of the offense, did consider the amount of drugs found in Lewis's home and their value, the duration of the illegal activity, and the effect on the community. Although the trial court found that the amount of drugs and their value were comparatively small, it gave greater weight to the duration of the illegal activity, having found a continuous pattern and practice of selling drugs to minors based on the credited testimony of Tarik Chapman. The court noted Chapman's testimony that Lewis's house was known as the neighborhood crack house. The court's finding that Lewis willfully and repeatedly sold drugs from the house, that she subjected her young grandchild to an

---

4. In footnote 7, before outlining approaches taken in other jurisdictions, the Court stated, "We do not here decide which approach is appropriate because without a value for the Lewis house we do not know yet whether the

forfeiture meets the threshold question of whether the forfeiture is grossly disproportionate, nor has the question undergone the sharpening and annealing process of litigation in the lower courts."

unsafe and unhealthy environment, and that she purposely sold drugs to juveniles without consideration for the ill effects on her neighbors and community. Those findings are supported by the credited evidence. The trial court's focus comports with *Bajakajian's* placement of the primary emphasis on the culpability of the defendant.

Finally, Lewis argues that the trial court should have considered the actual penalties imposed rather than the maximum possible penalties in evaluating the gravity of the defendant's offense. After considering the parties' arguments on this issue, we must conclude that the trial court properly adopted the more objective approach and compared the penalty imposed to the maximum penalty available, an approach endorsed in *5444 Spruce Street:* "The Court enumerated factors by which a court may measure the gravity of the offense, each of which is limited to the conduct of the defendant: the penalty imposed as compared to the maximum penalty available; whether the violation was isolated or part of a pattern of misbehavior; and the harm resulting from the crime charged." 574 Pa. at 433, 832 A.2d at 402 (citing *Bajakajian,* 524 U.S. at 338–39, 118 S.Ct. 2028).

In determining whether a forfeiture is "grossly disproportional" to the gravity of the offense, our considerations are not the same as those weighed by the sentencing judge. For any number of reasons, the charges against a criminal defendant are often reduced, and in many cases, sentencing does not reflect the actual gravity of the defendant's conduct. As part of the excessive fines analysis, where the constitution prohibits "grossly disproportional" fines, a court is concerned with the statutory limits of punishment, which may not be exceeded. To consider only the penalties imposed would limit the forfeiture

more to a unreasonableness standard than to a grossly disproportional standard. A penalty is not grossly disproportional if it does not exceed the reprehensibility of the defendant's conduct or the statutory sanctions for that conduct. *Willow Inn, Inc. v. Public Service Mutual Insurance Company,* 399 F.3d 224 (3d Cir.2005) (applying *Bajakajian* to a punitive damage award); *United States v. 415 East Mitchell Avenue,* 149 F.3d 472 (6th Cir.1998) (comparing value of the forfeited real estate to the potential fine had the defendant been prosecuted under federal law); *State v. Truman Mortensen Family Trust,* 8 P.3d 266 (Utah 2000) (fine does not violate the Excessive Fines Clause where it is within the limits set by the legislature).

In the present case, the judge properly determined that pursuant to Section 13(f)(1.1) of the Controlled Substances Act, 35 P.S. § 780–113(f)(1.1), the penalty for delivery of crack cocaine and possession of crack cocaine with intent to deliver are each punishable by imprisonment of up to ten years and a fine of up to $100,000 or both, "or such larger amount as is sufficient to exhaust the assets utilized in and the profits obtained from the illegal distribution" of the controlled substances. The maximum penalty for an offense offers an accurate gauge of the gravity of the offense, and as noted by the Commonwealth, the forfeiture in this case, worth approximately 25 to 40 percent of the maximum fine, is clearly not grossly disproportional to the gravity of the offense. The trial court gave due consideration to all of the appropriate factors, and its findings and conclusion that the forfeiture in this case was not an excessive fine are supported by the requisite evidence.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 6th day of January 2006, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is affirmed.

### DISSENTING OPINION BY Judge PELLEGRINI.

At issue before this court is which factors should be used in determining whether the amount of the forfeiture is grossly disproportional to the gravity of a defendant's offense so as to make it unconstitutional under The Eighth Amendment to the U.S. Constitution which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

In a previous decision, *Commonwealth v. Real Property & Improvements Commonly Known as 5444 Spruce Street,* 574 Pa. 423, 832 A.2d 396 (2003), our Supreme Court explained the standard enunciated by the United States Supreme Court in *U.S. v. Bajakajian* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998), to determine whether a fine was excessive under The Eighth Amendment to the U.S. Constitution:

> [B]ajakajian, however, requires that in cases where a punitive forfeiture is involved, the court "compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Bajakajian,* 524 U.S. at 336–37, 118 S.Ct. 2028.
> The Court enumerated factors by which a court may measure the gravity of the offense, each of which is limited to the conduct of the defendant: the penalty imposed as compared to the maximum penalty available; whether the violation was isolated or part of a pattern of misbehavior; and the harm resulting from the crime charged. *Id.* at 338–39, 118 S.Ct. 2028.(FN7).

*Spruce Street,* 832 A.2d at 402.

*Spruce Street* then reiterated that to determine whether a forfeiture constituted an excessive fine under the Eight Amendment,[1] which protections are co-extensive with the Eighth Amendment, that a comparison of the value of the item forfeited must be measured against the "gravity of the offense." If the amount is grossly disproportional to the "gravity of the offense," then it is unconstitutional. The method of determining the gravity of the offense is what is at issue in this case.

In *Spruce Street,* at footnote seven, our Supreme Court listed the various other methods that other courts have used to determine the "gravity of the offense" as follows:

> Three jurisdictions have applied a multi-faceted measuring of the property forfeited "to the gravity of a defendant's offense." Bajakajian, 524 U.S. at 334, 118 S.Ct. 2028, 141 L.Ed.2d 314. See e.g. *United States v. 3814 NW Thurman Street, Portland, Or., A Tract of Real Property,* 164 F.3d 1191 (9th Cir.1999) (considering the culpability of the offender, other penalties and the extent of the harm caused); *Wilson v. Commissioner of Revenue,* 656 N.W.2d 547, 555 (Minn.2003) (same); *United States v. Wagoner County Real Estate,* 278 F.3d 1091, 1101 (10th Cir.2002) (considering the benefit to the defendant, the value of the forfeiture and the connection to the crime).

---

1. Article I, Section 13 of the Pennsylvania Constitution also provides that: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." Pa. Const. art. I, § 13.

Other jurisdictions compare the value of the property to a subjective estimation of the gravity of the offense. See e.g. *Ex parte Kelley*, 766 So.2d 837, 840 (Ala. 1999) (forfeiting a $30,000 Pontiac Grand Prix excessive under the Bajakajian standard when four tablets of the controlled substance aminorex and 6.2 grams of marijuana had been found in the automobile); State ex rel. *Utah Air Quality Bd. v. Truman Mortensen Family Trust*, 8 P.3d 266, 274 (Utah 2000) (fine of $23,000 not grossly disproportionate to violations of air quality regulations regarding asbestos removal); *State v. Klawonn*, 609 N.W.2d 515, 518 (Iowa 2000) ($150,000 fine for victim restitution was not excessive in an involuntary manslaughter case); *United States v. Wyly*, 193 F.3d 289, 303 (5th Cir.1999) (forfeiting $4 million in assets of a company which bribed the highest ranking law enforcement officer in the parish, manipulated financial accounts, and laundered money was not grossly disproportionate); *United States v. Real Property Known and Numbered as 415 East Mitchell Ave., Cincinnati, Ohio*, 149 F.3d 472, 478 (6th Cir.1998) (forfeiting a home valued at $220,000 was not disproportionate for a significant marijuana cultivation operation).

A more objective standard is found in the jurisdictions which look first to the legislative body which has specified the maximum permissible fine for a given offense, holding that if the value of forfeited property is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture is constitutional. *United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir.1999) (upholding fine of $500,000 for dishonest mortgage brokers); *United States v. Newsome*, 322 F.3d 328, 342 (4th Cir. 2003) (upholding a restitution order of almost $250,000 when the fine could have been twice as large); *United States v. Sherman*, 262 F.3d 784, 795 (8th Cir. 2001) (forfeiting a $750,000 property is not excessive when the potential fine was $4 million); *United States v. Moyer*, 313 F.3d 1082, 1086 (8th Cir.2002) (forfeiture of half the amount of the permissible fine is "presumptively not excessive."); *United States v. Dicter*, 198 F.3d 1284, 1292 (11th Cir.1999) (same). A minority of jurisdictions, to date, have considered the effect of the forfeiture on the defendant. See e.g. *State v. Real Property at 633 East 640 North, Orem, Utah*, 994 P.2d 1254, 1257–59 (Utah 2000). That approach has been specifically rejected in *State v. Izzolena*, 609 N.W.2d 541, 551 (Iowa 2000), and 817 N.E. 29th *Drive, Wilton Manors*, 175 F.3d at 1311.

*Spruce Street*, 832 A.2d at 403.

However, while *Spruce Street* provided some guidance, it refused to choose one of those methods to determine the gravity of the offense because, in part, this issue had not "undergone the sharpening and annealing process of litigation in the lower courts." *Spruce Street*, 832 A.2d at 403. With that legal background set forth, we can now turn to whether the forfeiture in this case was constitutional.

Because of the two reversals and remands by the Supreme Court of the decision to affirm the trial courts and reversals to either apply the correct standard of review or to determine the value of the property, the procedural history is a bit complicated, but the underlying facts are not. On February 20, 1995, police made an undercover buy of crack cocaine and marijuana at 5444 Spruce Street, Philadelphia, which was owned by Elizabeth Lewis (Lewis), who had lived in the house since 1962. The next day, police executed a search warrant at the first floor apartment

at 5444 Spruce Street and found five packets of crack cocaine in a purse in the living room and 11 packets of marijuana and $20 cash in a cup in the kitchen. Lewis was arrested and charged with delivery of a controlled substance and possession of a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act (Controlled Substances Act), Act of April 14, 1972, P.L. 233, *as* amended, 35 P.S. §§ 780–101—180–179. On October 3, 1995, Lewis pled guilty to a single charge of possession with intent to deliver and was sentenced to two years probation and a fine of $185. The value of the drugs involved in Lewis's guilty plea was less than $80. None of the usual trappings of drug dealing—scales, paper, cutting agents, sales records—were found during the search of Lewis's home. This was her first offense.

Evidence was offered at several forfeiture hearings from the police officers who conducted the search of 5444 Spruce; Tarik Chapman, who testified that as a juvenile, he and others purchased drugs at 5444 Spruce Street; a juvenile case worker who testified that no deal had been made with Chapman in return for his testimony; and Lewis, who testified that she pled guilty solely to protect her daughter who was the actual drug dealer and real estate broker about the value of 5444 Spruce Street. Accepting the Commonwealth's valuation of $25,000 over that of Lewis's valuation, the trial court found that on February 20, 1995, Lewis sold drugs to undercover Philadelphia Police Officer Willie Jones, and that the search conducted the next day turned up five packets of crack cocaine and 11 packets of marijuana in the residence after locating her in a neighborhood bar. It also found that the property was only worth $25,000.

Based on that evidence, the trial court found that the forfeiture did not violate the Eight Amendment because the amount forfeited was not grossly disproportional to the gravity of the defendant's offense. Rejecting Lewis's argument that the gravity of the offense should be determined by the sentence imposed, the trial court instead judged the "gravity of the offense on the possible fines for the offense committed, include those never charged such as selling crack to an undercover officer is punishable by a sentence of up to 10 years and a $100,000 fine, selling cocaine to a minor by a sentence of up to 20 years and $100,000 fine, and sale of marijuana by a sentence of up to 5 years and a $15,000 fine." It also found that the violation was part of a pattern of misbehavior and not an isolated incident, and that there was obvious harm resulting from Lewis selling drugs to neighborhood teenagers. It ordered the property forfeited and, as a result, Lewis, her daughter and her granddaughter had to move to a homeless shelter.

Agreeing with the trial court's expansive definition of "offense" to include all that Lewis was charged with or could have been charged with, in finding the "gravity of the offense" proportional to the forfeiture, the majority states:

> Although the trial court found that the amount of drugs and their value were comparatively small, it gave greater weight to the duration of the illegal activity, having found a continuous pattern and practice of selling drugs to minors based on the credited testimony of Tarik Chapman. The court noted Chapman's testimony that Lewis' house was known as the neighborhood crack house. The court's finding that Lewis willfully and repeatedly sold drugs from the house, that she subjected her young grandchild to an unsafe and unhealthy environment, and that she purposely sold drugs to juveniles without consideration for the ill

effects on her neighbors and community. Those findings are supported by the credited evidence. The trial court's focus comports with *Bajakajian's* placement of the primary emphasis on the culpability of the defendant.

(Majority opinion at 40.)

From the above, the majority did not choose any particular approach but seems to have aggregated all the parts of the suggested approaches that would not make the forfeiture grossly disproportional without taking into consideration the mitigating factors that our Supreme Court suggested were available in these approaches.

I would, however, take a more objective approach in determining the "gravity of the offense" by examining the actions of the district attorney when exercising his or her discretion in deciding what offenses it will prosecute, the district attorney in agreeing to punishment in the plea, and the trial court in deciding what type of penalty to impose. My approach would consist of two simple factors:

**1. The "gravity of the offense" measured against the fine that could be imposed by offense with which the actor is convicted.**

Based on the information received, the district attorney makes a judgment on whether that information warrants bringing charges on that information ei-

ther because he cannot make out the crime beyond a reasonable doubt or because the "gravity of the offense" does not warrant the expenditure of its resources. In other words, this assumes that the district attorneys reasonably carry out their responsibilities and are not derelict in their duty in determining the "gravity of the offense." [2]

**2. The maximum fine that could be imposed is tempered by the sentence actually imposed.**

Again, when a trial judge imposes a sentence or a district attorney accepts a plea, both are making a judgment about the gravity of the offense. To assume that either imposed a fine not appropriate to the "gravity of the offense" would suggest that they either made a grievous mistake or were derelict in their duties.[3]

This two-prong test approximates what the district attorney and the courts think of the "gravity of the offense" to the particular defendant, as well as giving due consideration to the General Assembly's judgment of the harm this type of crime causes when it sets a maximum fine but allows discretion to those officials of whether any fine should be imposed at all. It also considers how the district attorney views the offense when he or she is carrying out his or her primary responsibility to

**2.** In *Spruce Street,* the Supreme Court held that the "gravity of the offense," as stated in *Bajakajian,* is to be primarily based on the culpability of the defendant rather than on the crime in the abstract. The Court went on to say that this does not mean that the excessiveness of the fine may be weighed against the cost to society of the traffic in illegal drugs. *Spruce Street,* 832 A.2d at 402. These statements instruct us to weigh the amount of the forfeiture only against that for which a defendant is specifically guilty, hence, the use of the term "culpability."

**3.** *Bajakajian* does, in fact, state that the penalty imposed as compared to the maximum penalty is a relevant factor in the proportionality standard. *Bajakajian,* 524 U.S. at 338–339. In *Bajakajian,* it was the large discrepancy between the actual and maximum penalty that caused the United States Supreme Court to find the defendant's culpability to be relatively small and the forfeiture to be unconstitutional. As noted above, our Supreme Court in *Spruce Street* has recognized the significance of *Bajakajian's* holding to be that the gravity of the offense is determined, first and foremost, by the specific culpability rather that the maximum penalty available.

protect the public by prosecuting crimes, untainted by the desire to forfeit money or property to supplement their budgets that could lead to the "hyping" of an offense or by adding offenses in civil forfeiture cases he or she chooses not to bring as not being sufficiently serious.[4] *See generally* E. Blumenson & E. Nilsen, *Policing for Profit: The Drug War's Hidden Economic Agenda*, 65 U. CHI. L. REV. 35 (1998).

Applying this two prong test to this case inescapably leads to the conclusion that the forfeiture in this case is excessive: Lewis was charged with a single count of possession with intent to deliver, 35 P.S. § 780-113(a)(1), which is punishable by paying a fine not exceeding $5,000. In comparison to that maximum fine, the $25,000 forfeiture is grossly disproportional to the "gravity of the offense" on that measure alone.

While in this case, we do not even have to go on to the second prong to determine whether the fine imposed by the sentencing court tempers the maximum fine; were we to do so, we could use as an example a possible fine of $200,000. Because the district attorney agreed to and the sentencing court imposed a sentence of two years probation and a fine of $185, the insignificance of the sentence imposed simply shows that both the district attorney and the sentencing court did not believe the offense to be grave but rather insignificant.

Based on this test, measured against the gravity of the offensive, the forfeiture of Lewis's house worth $25,000 is an excessive fine under the Eighth Amendment to the United States Constitution. Accord-

ingly, because I would reverse the trial court, I respectfully dissent.

---

4. 42 Pa.C.S. § 6801(f) provides: Cash or proceeds of forfeited property transferred to the custody of the district attorney ... shall be placed in the operating fund of the county in which the district attorney is elected. The appropriate county authority shall immediately release from the operating fund, without restriction, a like amount for the use of the district attorney enforcing the provisions of The Controlled Substance, Drug, Device and Cosmetic Act. The entity having budgetary control shall not anticipate future forfeitures or proceeds therefrom in adoption and approval of the budget for the district attorney.